IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CATHY A. MOLNAR,                                    OPINION AND ORDER

             Plaintiff,

                                                         09-cv-522-bbc

       v.

MICHAEL ASTRUE,
Commissioner of Social Security,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is an action for judicial review of an adverse decision of the Commissioner of

Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Cathy A. Molnar seeks

reversal of the commissioner's decision that, because she is not disabled, she is not eligible

for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42

U.S.C. §§ 416(I) and 423(d).  Plaintiff contends that the administrative law judge erred in

finding that she did not have a listed impairment.  Also, she contends that the administrative

law judge erred in assessing her credibility and determining her residual functional capacity.

Finally, she argues that the administrative law judge made an erroneous finding at step five.

       Plaintiff's arguments are not persuasive.  Substantial evidence in the record supports

the administrative law judge's conclusion that plaintiff did not have a listed impairment. Also, I find no error in the manner in which the administrative law judge assessed plaintiff's credibility or determined her residual functional capacity. Substantial evidence supports her conclusion at step five that plaintiff was not disabled because there were jobs that she could perform in the regional economy. For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A. Background

Plaintiff was born on July 27, 1956. AR 15. She has a high school education and has worked as an office clerk, bartender, waitress and car salesperson. AR 15.

Plaintiff filed an application for disability insurance benefits on January 18, 2006, alleging that she had been unable to work since March 11, 2005 because of degenerative disc disease of the cervical and lumbar spine. In February and May 2006, plaintiff completed reports for the state agency concerning her daily activities, noting that she took care of her animals; did light gardening, cooking and household chores; played computer games; helped to care for her father who was in an assisted living facility; drove a car; shopped for groceries, clothing and other necessities; paid the bills; and performed her own self-care functions

2

without significant difficulty.  AR 98-111.

After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on October 31, 2008 before Administrative Law Judge Gail Reich.  The administrative law judge heard testimony from plaintiff, AR 252-59, a neutral medical expert, AR 259-62, and a neutral vocational expert, AR 262-70.  On February 5, 2009, the administrative law judge issued her decision, finding plaintiff not disabled.  AR 10-17.  This decision became the final decision of the commissioner on July 27, 2009, when the Appeals Council denied plaintiff's request for review.  AR 2-5.

B. Medical Evidence

1. First two cervical fusions

In July 1997, plaintiff had an anterior cervical diskectomy and fusion at C6-C7.  AR 13.  In the fall of 2005, plaintiff was treated by Dr. Thomas E. Hinck for lower back pain.  She received epidural injections in September 2005.  Plaintiff reported having numbness in both arms into her fingers.  Hinck referred plaintiff to neurosurgeon Dr. Robert Roach.  AR 157-59.

Plaintiff saw Dr. Roach on November 8, 2005.  On examination, Roach indicated that plaintiff had nearly normal motor strength in her extremities and some diminished

3

reflexes.  He noted that plaintiff had a mildly spastic gait.  He recommended cervical fusion surgery and plaintiff agreed to proceed.  AR 177.  On November 14, 2005, Roach performed an anterior cervical decompression at C3-C6.  AR 180-82.

One month after the surgery, Dr. Roach saw plaintiff.  He found that the numbness in her hands and arms had resolved and the strength of her arms had improved.  On examination, Roach found that plaintiff had normal motor strength in her upper and lower extremities, improved reflexes and normal gait.  He restricted her to lifting five pounds.  AR 173-74.

## 2.  Lumbar fusion

On April 21, 2006, Dr. Hinck treated plaintiff for low back pain without radiation into her legs.  AR 146.  A February 2006 magnetic resonance imaging scan had shown degenerative conditions and stenosis with some nerve root impingement in plaintiff's lumbar spine.  AR 150, 163.  Hinck diagnosed degenerative lumbar spine disease and referred her to Dr. Sunil Thomas, a neurosurgeon.  AR 146.

On May 17, 2006, plaintiff saw Dr. Thomas, who noted that plaintiff walked with a "markedly forward-flexed posture" and exhibited pain symptoms.  After examining plaintiff, he wrote that her straight leg raising test was negative and that her strength and reflexes were normal.  He diagnosed degenerative disc disease in her lumbar spine and

4

recommended fusion surgery.  Plaintiff declined to have the surgery.  AR 147.

On June 7, 2006, plaintiff saw Dr. Joseph Perra for low back pain and told him that her two previous cervical fusions had relieved her symptoms but that her lower back pain had worsened in the previous two years.  Perra noted that plaintiff had an abnormal gait but no motor loss.  He diagnosed non-disc related back pain because of "mechanical instability." AR 143-44.  In July 2006, plaintiff had a lumbar spinal fusion at L4-S1.  AR 219.

On August 11, 2006, plaintiff returned to see Dr. Perra, telling him that she felt wonderful, could walk without pain and that the pain was nearly gone. AR 226.  Perra noted that plaintiff walked with a normal gait and recommended that she start physical therapy. AR 212, 226.   At her initial physical therapy session, plaintiff reported continually decreasing back pain and improvement after her surgery.  She was sleeping well, walking and being "quite active" in the yard.  AR 219.  By August 29, 2006, plaintiff reported that she could do "light yard work, sleep at night and function throughout the day."  AR 217.  She had spent two hours searching in a gravel pit for agates with no pain.  AR 217.  In early September 2006, plaintiff told her therapist that she had no lower back discomfort during therapy.  She reported being very active.  AR 214-16.  Plaintiff was discharged from physical therapy on September 15, 2006.  AR 213.

Dr. Perra saw plaintiff on October 18, 2006 and noted that she could move quite comfortably and that her strength was normal.  Perra recommended that plaintiff gradually

5

progress to lifting up to 30 pounds.  AR 227.  On January 17, 2007, when plaintiff saw Perra, she reported feeling "substantially better," with no pain and no other complaints.  Her gait was normal.  AR 228.

On June 6, 2007, plaintiff went to see Dr. Perra for hip, pelvic and left leg pain from a fall.  On examination, Perra found that plaintiff had no tenderness in her back and noted that she could bend forward without pain and walk with a normal gait.  AR 229.  On August 23, 2007, Dr. Hinck treated plaintiff for hip pain.  He noted that her cervical and lumbar fusions were okay and that she had no complaints of radiating pain.  Her balance and gait were normal.  AR 206.

3.  <u>Last cervical fusion</u>

On November 9, 2007, Dr. Perra saw plaintiff for increasing neck pain.  He noted that her lower back was doing very well and that she had a stable, normal gait.  On examination, Perra found decreased range of motion in plaintiff's neck and recommended a magnetic resonance imaging scan.  AR 230.  The scan showed much less compression of the spinal cord than was present in 2005 and a mildly degenerated disc at C7-T1 with no central or foraminal stenosis.  AR 205.  Perra recommended disc decompression surgery for plaintiff's lower cervical spine.  AR 234.

On December 27, 2007, Dr. Hinck completed an evaluation of plaintiff's restrictions.

6

He found that she could

- occasionally lift five to 20 pounds from the floor;

- continuously lift five to ten pounds from table;

- occasionally lift 10 to 20 pounds from the table with no lifting overhead;

- carry five to 10 pounds continuously and 10 to 20 pounds occasionally 30 feet and five to 20 pounds more than 30 feet occasionally;

- frequently grasp, push and pull and perform fine manipulation with both hands;

- sit five hours in an eight-hour work day and stand or walk three hours in an eight-hour work day

- occasionally bend side-to-side and rotate the upper body,

but could never

- bend, climb, crawl, duck walk, squat,

- reach at shoulder or above level;

-  rotate head or neck or

- work at unprotected heights.

He stated plaintiff would not have to lie down during the work day but would miss two days of work a month.  Hinck added that she would need to change positions frequently. AR 202.

On April 2, 2008, plaintiff returned to Dr. Perra, complaining of increased neck pain. He recommended fusion surgery for her lower cervical spine.  AR 235.  On May 27, 2008, plaintiff had an anterior cervical diskectomy, decompression and fusion with bone graft and instrumentation.  AR 237-39.

On July 2, 2008, plaintiff saw Dr. Perra and reported that her arm and neck pain were gone and that she had no numbness or tingling.  AR 240.  Perra found plaintiff had full sensation and full motor strength in her upper extremities.  He released her to lift up to 10 to 20 pounds.  He also suggested she could mow her lawn and drive.  AR 240.

## C.  Consulting Physicians

On February 9, 2006, state agency physician Pat Chan completed a physical residual functional capacity assessment for plaintiff, listing a diagnosis of cervical and lumbar degenerative disc disease, status post cervical fusion.  AR 135.  Chan found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day with only occasional kneeling and limited overhead reaching and lifting.  AR 137-38.  He indicated that there was no treating source's statement regarding plaintiff's physical capacities in the record.  AR 141. On June 7, 2006,  Dr. Foster affirmed Dr. Chan's residual functional capacity assessment for plaintiff.  AR 120.

8

D.  Hearing Testimony

Plaintiff testified that she stopped working in 2005 because she was laid off, but that she can no longer work because of her disabilities.  AR 253.  Initially, plaintiff testified that she lay down frequently during the day and did not do much of anything.  AR 255.  She testified that she took care of four dogs and two cats, did a little gardening, did the grocery shopping, drove a car in the country and cooked meals.  AR 255, 259.  Further, she testified that she went out to dinner with her husband once in a while and that they played cards. AR 256.  She could sit at the computer for 10 to 15 minutes at a time.  AR 257-58.

Plaintiff testified that she had a cervical fusion in May 2008, AR 258, that she can not move her neck or twist at her waist, AR 259, and that her hands are becoming numb. AR 258.

The administrative law judge called Dr. Harold Mills to testify as a neutral medical expert.  AR 259.  He said that plaintiff had major cervical disc problems requiring three surgeries and that she had had surgery for lumbar discogenic disease.  He testified that he agreed with the restrictions provided by her treating physician on December 27, 2007, limiting plaintiff to lifting 10 to 20 pounds from the floor and no lifting from the table or overhead.  Mills characterized Hinck's restrictions as precluding plaintiff from performing sedentary work.  AR 260.

9

Mills testified as follows:

> There's no question that this meets 1.04 for disorders of the
> spine with herniated nucleus pulposus, spinal stenosis,
> degenerative disc disease and I would put 1.04(a) because its
> major, there's quite a bit of significant amount of nerve root
> compression.    And she certainly has a neuroanatomic
> distribution of pain.

AR 261.  He testified that plaintiff had evidence of root compression and limitation of

motion of the spine.  Also, he testified that although plaintiff had had pain radiating in her

arms and weakness in her hands, he did not know whether she had any current weakness in

her hands.  AR 261.

In answering the administrative law judge's question whether plaintiff had motor loss,

he stated that he could not give a specific answer.  The administrative law judge then asked

whether there was evidence in the record of motor loss accompanied by sensory or reflex loss.

Mills referred to a November 8, 2005 note that plaintiff had had spastic gait with some

motor loss.  AR 261.  He also testified that the May 27, 2008 operative notes indicated that

prior to the surgery plaintiff was having gait problems.  AR 262.

Next, the administrative law judge called Sidney Bauer, a neutral vocational expert

to testify.  AR 262.  The administrative law judge asked him to assume a hypothetical

individual who could

•      occasionally lift five to 10 pounds from the floor,

- occasionally lift 10 to 20 pounds from the floor,

- frequently lift 10 to 20 pounds from the table and

- continuously lift five to 10 pounds from the table with no lifting overhead.

Bauer asked for clarification on the occasional lifting from the floor.  The administrative law judge stated that it would be five to 20 pounds occasionally.  The administrative law judge also stated that the individual

- could not bend, crawl, climb, crawl, duck walk, squat or reach above shoulder level,

- could frequently reach below shoulder level, push and pull, grasp and perform fine manipulation and

- could sit up to five hours, walk up to three hours and stand six hours in an eight-hour work day with no work at unprotected heights or rotation of the head and neck and moderate side to side bending and rotation of the upper body.

Bauer asked the administrative law judge for clarification of the restriction on rotation of the upper body.  The administrative law judge said that the individual could occasionally move the upper body, and added that the individual had to have the ability to change positions frequently.  AR 263-64.

Bauer testified that the individual could not perform plaintiff's past work.  Initially,

11

Bauer stated that he did not think that there were any jobs in the regional economy that the individual could perform.  After suggestions by the administrative law judge, Bauer testified that the individual could perform parking lot attendant jobs (DOT # 915-667-014), lens matcher (DOT #713.687-030), ticket seller or ticket taker (DOT #211.467.030) and optical salvager (DOT # 712.687-038).  AR 267-68.  He testified that the individual could perform these jobs if he or she could not move his head and neck at all but could move his or her trunk or upper body occasionally.  AR 268-69.


E.  Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. § 404.1520.

At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since March 11, 2005, her alleged onset date.  At step two, she found that plaintiff had the severe impairment of degenerative disc disease of the cervical and lumbar spine with history of multiple surgeries.  At step three, the administrative law judge found that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  Specifically, she found that plaintiff did not meet Listing 1.04, noting that "Dr. Mills emphasized that there was no evidence of motor loss."  AR 12.

12

The administrative law judge found that plaintiff retained the residual functional capacity to perform light work except for any work involving

- bending, climbing, crawling, squatting, reaching at or above shoulder level,

- sitting for more than five hours during an eight-hour workday,

- standing or walking for more than three hours during an eight-hour workday,

- work at unprotected heights,

- work involving rotation of the head or neck and

- work involving more than occasional rotation of the upper body or side to side bending.

AR 13.

At step four, the administrative law judge found that plaintiff was not able to perform her past work.  AR 15.  At step five, the administrative law judge found from the vocational expert's testimony, that there were 912 parking lot attendant jobs, 1,700 lens matcher jobs, 1,700 ticker taker or seller jobs and 1,600 optical salvager jobs that plaintiff could perform. AR 16.  The administrative law judge found the expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  She then concluded that plaintiff was not disabled.  AR 16.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

14

B. <u>Listed Impairment</u>

Plaintiff contends that the administrative law judge erred in finding that her back impairment did not meet the listed impairment, 1.04(A). To meet this listing, an individual must have a spine disorder resulting in a compromise of a nerve root or the spinal cord with evidence of neuro-anatomic distribution of pain, limitation of motion of the spine and motor loss (atrophy with associated muscle weakness or muscle weakness), accompanied by sensory or reflex loss. 20 C.F.R., Pt.404, Subpt. P, App.1, 1.04 Disorders of the Spine.

Plaintiff maintains that the administrative law judge disregarded the neutral medical expert's opinion that plaintiff's impairment met the listing. Plaintiff is correct that the expert testified that plaintiff's back impairment met the listing. He testified that plaintiff had a significant amount of nerve root compression and a neuro-anatomic distribution of pain. Upon further questioning by the administrative law judge, however, the expert testified that he could not give a specific answer concerning whether there was evidence in the record that plaintiff had motor loss accompanied by sensory or reflex loss. Then, he gave two examples of notes in the record that indicated plaintiff had gait problems. In her decision, the administrative law judge found that Mills emphasized that there was no evidence of motor loss.

Although the administrative law judge's interpretation of Mills's testimony may not be entirely correct, her conclusion that plaintiff had no motor loss and therefore did not

15

meet the listing is supported by substantial evidence in the record.  On November 8, 2005, before plaintiff's second cervical fusion, plaintiff had some loss of motor strength and some diminished reflexes, but this was corrected by the surgery.  One month after the surgery she had normal motor strength, improved reflexes and a normal gait.  On June 7, 2006, before her lumbar fusion, plaintiff had abnormal gait but no motor loss.  After her fusion surgery, she had a normal gait.  This evidence indicates that any minor motor loss that plaintiff had was temporary and was corrected by surgery.  Dr. Mills did not identify any evidence of gait problems or motor loss that persisted after plaintiff had surgery.

Plaintiff argues that the administrative law judge discredited plaintiff's treating physician's opinions that were consistent with the opinions of the medical expert.  This argument is not persuasive.  There is no opinion in the record by a treating physician that plaintiff had a listed impairment.  Further, there is no evidence in the record other than the note on November 8, 2005 that plaintiff had any motor loss.

C.  Credibility

Plaintiff challenges the administrative law judge's determination that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her

16

impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004). When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible. Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c). See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference

17

because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Plaintiff argues generally that the administrative law judge ignored plaintiff's testimony about her pain that was supported by objective medical evidence and ignored the possibility that her condition would deteriorate in the future.  As the commissioner points out, plaintiff fails to cite any specific evidence that the administrative law judge failed to consider or how it would have affected her conclusions.  Further, the fact that plaintiff's condition might deteriorate in the future is not material to whether plaintiff was currently disabled.

In her decision, the administrative law judge stated that plaintiff's "allegation of persistent and lower back pain is clearly supported to a certain degree by the medical

18

evidence." AR 14. She noted, however, that the surgeries and epidural injections had improved plaintiff's condition and lessened her pain. AR 14. She also found that plaintiff's testimony concerning her need to lie down during the day was contradicted by her treating physician. Also, the administrative law judge noted that plaintiff had admitted in February and May 2006 to a fairly significant range of daily activities, including taking care of her animals and doing light household chores, and that there was no medical evidence that plaintiff's condition had deteriorated significantly since then. She also found no evidence that plaintiff's medications were ineffective or caused any disabling side effects. AR 14-15. Each of these findings is supported by substantial evidence in the record.

Plaintiff has not demonstrated that this is one of those rare occasions in which the court should disturb the administrative law judge's credibility finding. She built an accurate and logical bridge between the evidence and her conclusion that plaintiff's statements considering her limitations were not fully credible. It is plain from the decision that the administrative law judge properly considered the objective medical evidence, the absence of medication side effects and plaintiff's activities in arriving at her credibility determination. I am satisfied that her determination was not patently wrong.

### D. Residual Functional Capacity

Plaintiff argues that the administrative law judge's residual functional capacity

assessment is not supported by substantial evidence in the record.  A claimant's "residual functional capacity" is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Social Security Ruling 96-8p; see also 20 C.F.R. § 404.1545.  A "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.  At the disability hearing stage, the responsibility for determining the claimant's residual functional capacity lies with the administrative law judge, who must consider all relevant medical and other evidence in the record, including statements from medical sources, the claimant and others. 20 C.F.R. §§ 404.1545, 404.1546.

The administrative law judge found that plaintiff retained the residual functional capacity to perform light work except for any work involving

- bending, climbing, crawling, squatting, reaching at or above shoulder level,

- sitting for more than five hours during an eight-hour workday,

- standing or walking for more than three hours during and eight-hour workday,

- work at unprotected heights,

- work involving rotation of the head or neck and

- work involving more than occasional rotation of the upper body or side to side bending.

Plaintiff's argument that this assessment is not supported by substantial evidence is

20

surprising because the assessment adopts nearly verbatim the restrictions found by plaintiff's treating physician, Dr. Hinck, on December 27, 2007. Dr. Mills, the medical expert, agreed with this assessment. AR 260. (Although Mills stated that Hinck found plaintiff unable to perform sedentary work, Mills's interpretation of Hinck's assessment is not supported by the record.) Plaintiff does not point to any evidence in the record showing that she had more restrictions than those found by Hinck. Therefore, the administrative law judge's residual functional capacity assessment was supported by substantial evidence.

### E.  Step Five

Plaintiff argues that the administrative law judge erred at step five. She argues that the administrative law judge's hypothetical question was confusing. However, it tracked the residual functional assessment of Hinck, plaintiff's treating physician. Further, when the vocational expert had questions about the various restrictions the administrative law judge proposed, the administrative law judge provided clarification.

Next, plaintiff contends that the administrative law judge confused the vocational expert to the extent that he was not able to come up with a job category to fit plaintiff's restrictions of no movement of the head and limited motion of the trunk. As the commissioner points out, this argument is not supported by the record. The expert identified four jobs that plaintiff could perform in the regional economy with the residual

functional capacity that plaintiff retained.  He testified that these jobs did not require movement of the head or neck or more than occasional movement of the trunk.  Plaintiff points to no evidence that plaintiff could not perform these jobs.  Therefore, I find that the administrative law judge's step five finding is supported by substantial evidence.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is AFFIRMED and plaintiff Cathy A. Molnar's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 3rd day of February, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge